IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JOHN WEI (f/k/a WEI XIANG YONG) | : | |
| | : | Case No. 23-13678 (AMC) |
| Debtors. | : | |
| | : | |

**OBJECTION OF JP VISION FINANCIAL LLC TO
DEBTOR'S DISCLOSURE STATEMENT AND PLAN**

TO:   THE HONORABLE ASHELY M. CHAN,
      CHIEF UNITED STATES BANKRUPTCY JUDGE

JP Vision Financial LLC ("JP Vision"), by and through its undersigned counsel, hereby objects to the disclosure statement dated January 24, 2025 (the "Disclosure Statement") and proposed plan (the "Plan") advanced by the individual debtor John Wei f/k/a Wei Xiang Yong (the "Debtor").  In support of its objection, JP Vision states the following:

**BACKGROUND**

1.      On December 4, 2023 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

2.      JP Vision, a Pennsylvania limited liability company with an office at 21236 Valley Forge Circle, King of Prussia, Pennsylvania, 19406, is a creditor in this bankruptcy case that holds a claim exceeding $11.5 million (the "Claim").

3.      JP Vision's Claim is based on personal guaranties executed by Debtor in connection with two commercial loans: one made by JP Vision to JM Investment US LP on December 23, 2021 in the original principal amount of $8 million (the "JM Investment Loan"); and one made by JP Vision to MJ Central Investment LP on September 14, 2022 in the original principal amount of $3.5 million (the "MJ Central Loan").

11380841.v3

4. Wei guaranteed the JM Investment Loan pursuant to a personal guaranty dated December 23, 2021 (the "JM Investment Guaranty").

5. Wei guaranteed the MJ Central Loan pursuant to a personal guaranty dated September 14, 2022 (the "MJ Central Guaranty").

    a.    *The JM Investment Loan*

6. The JM Investment Loan is secured by, among other things, certain real property located at 915 Route 73, Mount Laurel, New Jersey 08054 operated as a hotel (the "Hotel").

7. As a result of JM Investment US LP's default under the JM Investment Loan, JP Vision initiated a foreclosure action in connection with the Hotel in the Superior Court of New Jersey, Chancery Division, Burlington County, case no. 008364-24.

    a.    *The MJ Central Loan*

8. The MJ Central Loan is secured by, among other things, certain adjacent parcels of real property located at 1123-33 Spring Garden Street; 1135 Spring Garden Street; and 1122-32 Brandywine Street in Philadelphia, Pennsylvania 19123 (collectively, the "MJ Central Loan Property").

9. As a result of MJ Central Investment, L.P.'s default on the MJ Central Loan, JP Vision initiated a foreclosure action in connection with the MJ Central Loan Property in the Pennsylvania Court of Common Pleas for Philadelphia County on August 29, 2024 (the "Philadelphia Foreclosure").

# OBJECTION

## Debtor's Disclosure Statement Does Not Provide Adequate Information

10. Section 1125(b) of the Bankruptcy Code requires that before acceptance or rejection of a plan may be solicited from creditors, the proponent of a plan must submit a disclosure statement which, after notice and a hearing, must be approved by the court. To approve a disclosure statement, the court is obligated to determine that the disclosure statement contains adequate information—that is, a factual basis sufficient for the voting parties to arrive at an informed decision. *In re Unichem Corp.*, 72 B.R. 95, 96–97 (Bankr. N.D. Ill.), *aff'd*, 80 B.R. 448 (N.D. Ill. 1987), *citing* 11 U.S.C. § 1125(b); *In re Civitella*, 15 B.R. 206, 207 (Bankr. E.D. Pa. 1981).

11. Section 1125(a)(1) defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." *Id*.

12. Determination of the adequacy of a disclosure statement, and, therefore, approval of it, is within the sound discretion of the bankruptcy court and is to be determined on a case-by-case basis. *In re Snyder*, 56 B.R. 1007 (Bankr. N.D. Ind. 1986); *In re Medley*, 58 B.R. 255 (Bankr. E.D. Mo. 1986). "The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan." *In re Unichem Corp.*, 72 B.R. at 96–97, *citing In re Ligon*, 50 B.R. 127 (Bankr. M.D. Tenn. 1985); *In re William F. Gable Co.*, 10 B.R. 248 (Bankr. N.D. W. Va. 1981).

11380841.v3

13. Here, Debtor's Disclosure Statement fails to provide sufficient material information to permit a creditor to vote intelligently for or against the Plan. Alternatively, the Debtor often employs sanitized representations lacking important details necessary to provide adequate context to a creditor throughout the Disclosure Statement.

14. For instance, the Debtor refers to a "civil judgment" obtained by Shin Da Enterprises, Inc., 446-50 North 6th Street, LLC and Lijian Ren on October 26, 2023 in the amount of $5,130,482.40 (the "Judgment") that Debtor intends to place in Class 3. *See* Disclosure Statement, Section IV(B). Class 3 is comprised of general unsecured creditors—including, presumably, JP Vision—who are owed a total of $67,067,673.00. *Id.*

15. What Debtor fails to disclose, however, is that the Judgment was obtained on causes of action for wire fraud, bank fraud, theft by unlawful taking, theft by extortion, and interference with commerce by threat of violence. *See* Judgment, a true copy of which is attached as **Exhibit 1**.

16. Given the nature of claims underlying the Judgment, there is a substantial risk that the debt will be found to be non-dischargeable. Indeed, Shin Da Enterprises, Inc. and other Judgment plaintiffs have already filed an adversary proceeding against Debtor seeking precisely that relief, a fact also not contained in the Disclosure Statement.

17. As proposed, the Debtor intends to distribute under the Plan approximately $1.3 million to Class 3. However, if the Judgment is found to be non-dischargeable, the Debtor may either need to shift funding under the Plan to pay the Judgment plaintiffs, leaving unsecured creditors such as JP Vision with nothing; or the Plan will likely be found to be unconfirmable. *See, e.g., In re Hamilton*, 584 B.R. 310 (9th Cir. BAP 2018) (reversing bankruptcy court's approval of plan that made no meaningful provision for payment of creditor holding non-dischargeable debt

while at the same time implementing substantial collection injunction, on grounds that the plan did not meet the good faith requirement).

18. None of these risks are discussed in the Disclosure Statement.

19. Additionally, the Debtor's proposal for how the Plan will be funded is vague and illusory.

20. The Debtor suggests he will fund the Plan through "a sale of his interests in his companies," as well as through the sale of certain properties he owns individually. *See* Disclosure Statement, Section IV(E).

21. As evidence of this proposal, the Debtor attaches a letter of intent (the "LOI") to the Disclosure Statement from a private entity called GL Capital based in Columbia, Maryland dated January 23, 2025 reflecting a total purchase price of $3 million. Disclosure Statement, Ex. B.

22. The Debtor provides no background about GL Capital and it its financial wherewithal. Moreover, it is unclear from Debtor's Disclosure Statement what, if any, due diligence GL Capital has undertaken with respect to the properties listed in the LOI.

23. To wit, one of the properties that GL Capital proposes to purchase under the LOI is the MJ Central Property. As outlined above, however, the MJ Central Property is the subject of a pending sheriff's sale in April 2025 in connection with the Philadelphia Foreclosure prosecuted by JP Vision, following entry of default judgment in JP Vision's favor on October 9, 2024.

24. Under Debtor's Plan, the Debtor suggests that the MJ Central Property will generate nearly $750,000.00 in unencumbered cash to fund the Plan—nearly 25% of what will purportedly be available to fund the Plan.

25. This figure, however, appears to be based on a valuation of the MJ Central Property that is inflated beyond its fair market value.

26. More to the point, JP Vision is not aware of any pending proposal by GL Capital to purchase the MJ Central Property. Debtor's inclusion of the MJ Central Property as a primary source of funding for the Plan is either a gross oversight or indicates a lack of good faith. In either case, the illusory nature of such a substantial funding source demonstrates the Plan's lack of feasibility. *See* Disclosure Statement, Ex. B.

27. Additionally, the GL Capital LOI contains the following financing contingency: "Buyer's obligations under this [non-binding] contract are contingent upon Buyer obtaining <u>a firm unconditional written commitment for financing from the existing lender as an assignment of the existing loan agreement</u>. . . . If Buyer has not obtained such commitment by the Financing Contingency Date, either party may cancel this contract upon written notice to the other party and neither party shall have any further liability to the other." *See* Disclosure Statement, Ex. B (emphasis added)

28. Such a contingency gives GL Capital any number of opportunities to walk away from this alleged "deal" to pay Debtor $3 million for a collection of his business interests and properties—again highlighting the uncertain and illusory nature of funding as described in the proposed Disclosure Statement and Plan.

### Debtor's Plan Cannot Be Confirmed Because its Provisions Violate the Bankruptcy Code—Therefore the Disclosure Statement Cannot Be Approved Either

29. For the reasons outlined above, JP Vision believes that the Plan in its current form lacks feasibility and is not proposed in good faith within the meaning of subsections 1129(a)(11) and 1129(a)(3) of the Bankruptcy Code, respectively.

11380841.v3

30. Additionally, while the Debtor intends to sell many of the businesses in which he has an interest, he does not unequivocally state that he intends to sell **all** the businesses and/or properties in which he holds an interest.

31. It is nearly impossible to ascertain from the Disclosure Statement and Plan which assets the Debtor intends to retain. However, a review of business interests listed on Debtor's amended schedules and statements against the list of assets to be sold per Exhibit A of the Disclosure Statement reveals that at least some of these interests will not be marketed for sale.

32. As the Debtor does not intend to pay all creditors in full, Debtor's retention of any non-exempt property would violate the absolute priority rule, rendering the proposed Plan unfair and inequitable within the meaning of section 1129(b)(2) of the Bankruptcy Code. Nowhere does the Debtor provide for an infusion of new value that would permit him to retain non-exempt assets. Therefore, JP Vision believes that the Plan in its current form cannot be confirmed.

33. If a plan described in a disclosure statement is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the plan would be futile. *In re Quigley Co., Inc.*, 377 B.R. 110, 115–16 (Bankr. S.D.N.Y. 2007).

34. JP Vision expressly reserves the right to raise further objections to the Disclosure Statement and Plan, and to any amendments of same.

## **CONCLUSION**

35. For the foregoing reasons, approval of the Disclosure Statement should be denied, and JP Vision's objection should be sustained.

WHEREFORE, JP Vision Financial LLC respectfully requests the entry of an order denying approval of the Disclosure Statement for the foregoing reasons, together with such other and further relief as is just and proper.

|  |  |
|---|---|
|  | Respectfully submitted: |
| Dated: February 19, 2025 | KLEHR HARRISON HARVEY BRANZBURG LLP |
|  | */s/ Christopher J. Leavell*<br>Francis M. Correll, Jr.<br>Christopher J. Leavell<br>1835 Market Street, Suite 1400<br>Philadelphia, PA 19103<br>Telephone: (215) 569-4892<br>Email: fcorrell@klehr.com<br>Email: cleavell@klehr.com |
|  | *Attorneys for JP Vision Financial LLC* |

11380841.v3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JOHN WEI (f/k/a WEI XIANG YONG) | : | |
| | : | Case No. 23-13678 (MDC) |
| Debtors. | : | |
| | : | |

**CERTIFICATE OF SERVICE FOR THE
OBJECTION OF JP VISION FINANCIAL LLC TO
CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN**

I, Christopher J. Leavell, Esquire, hereby certify that I did cause a true and correct copy of the foregoing Objection of JP Vision Financial LLC to Confirmation of the Debtor's Chapter 11 Plan to be served on this 19th day of February 2025 upon all entered parties via the CM/ECF System of this Court.

Dated: February 19, 2025

KLEHR HARRISON HARVEY
BRANZBURG LLP

<u>*/s/ Christopher J. Leavell*</u>
Christopher J. Leavell
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-4892
Email: cleavell@klehr.com

*Attorneys for JP Vision Financial LLC*

11380841.v3

# **Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHIN DA ENTERPRISES INC. et al.

                :      CIVIL ACTION

    v.                 :

                :      No. 21-cv-3384

XIANG YONG et al.

## **CIVIL JUDGMENT**

AND NOW, this 26th day of October 2023, in accordance with the verdict, in which the jury found in favor of plaintiffs and against defendants on October 24, 2023, it is hereby **ORDERED** that the Office of the Clerk of Court shall file this judgment in connection with the previously filed jury verdict form (Doc. 199) and the Court's molding of the jury verdict herein.

Judgment is hereby entered in favor of Plaintiff(s) Shin Da Enterprises Inc., 446-50 N. 6th St. LLC, and Lijian Ren, and against Defendant(s) Wei Xiang Yong a/k/a John Wei, Jian Mei He a/k/a Mika He, UIG Construction LLC, PA Ridge Associates, Wei's Properties Inc., Redevelopment Consultants LLC, G&Y Contractor Inc., and Ying Nan Gai in the final verdict sum of **$5,130,482.40**, which is based on the Court's molding of the jury verdict of $1,710,160.80, by trebling it pursuant to 18 U.S.C. 1964(c). This final verdict is exclusive of attorneys' fees and costs.

In addition, the Office of the Clerk of Court shall dismiss and/or terminate all other remaining parties listed on the docket report. The Office of the Clerk shall also **CLOSE** this case, effective today's date.

1

**IT IS SO ORDERED**.

BY THE COURT:

/s/ Chad F. Kenney

_____
CHAD F. KENNEY, J.

Cc: Counsel